# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) Civil Action No. 2:13-cv-522-JRG |
| | ) (CONSOLIDATED - Lead Case) |
| Plaintiff, | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| ACER INC. AND ACER AMERICA CORP. | ) |
| Defendants. | ) |

## EXHIBIT B: DECLARATION OF KENNETH I. WERNER

I, Kenneth I. Werner, declare as follows:

1. I have a B.A. in physics from Rutgers University and M.S. in solid-state physics from the University of North Carolina at Chapel Hill.

2. I have been actively involved in the display industry since 1987. I am the founder and principal of Nutmeg Consultants, and was the editor of Information Display Magazine from 1987 to 2005. I serve as the marketing director for Tannas Electronic Displays and as a senior analyst for Insight Media. I am a founding co-editor of Display Daily and am a regular contributor to HDTVexpert.com.

3. I have read and understand the patents at issue in this case, U.S. Patent Nos. 6,755,547 ("the '547 patent"), 7,300,194 ("the '194 patent"), 7,384,177 ("the '177 patent"), 7,404,660 ("the '660 patent"), 7,434,974 ("the '974 patent"), 7,537,370 ("the '370 patent"), and 8,215,816 ("the '816 patent"). I am at least a person of ordinary skill in the art in the technology described and claimed in those patents, and was at the time of the applications of those patents.

4.     I understand that the defendants in this case contend that certain claim terms of the patents are indefinite. Although I am not an attorney, I understand that a term is indefinite if, when viewed in light of the specification and prosecution history, it does not inform those skilled in the art about the scope of the invention with reasonable certainty. I also understand that claims are generally to be accorded their plain and ordinary meaning as understood by one of ordinary skill in the art. As a person of at least ordinary skill in the art of the technology described and claimed in the patents at the time of the applications, I disagree with the contention that those claim terms are indefinite.

5.     I understand that the defendants may contend that the terms "desired light output distribution" of claim 1 of the '547 patent, "desired light output distribution or effect" of claim 23 of the '194 patent, and "desired light output color or uniformity" of claim 15 of the '177 patent are indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood with reasonable certainty those terms as they are used in the claims, and I believe that they should be accorded their plain and ordinary meaning. The patent specification gives several examples of the applications for the invention, *e.g.*, LCD backlight or lighting in general, decorative and display lighting …" ('194 patent at col. 9, ll. 1-12), and one of ordinary skill in the art would have known with reasonable certainty the scope of these terms based on the particular applications for which the backlight was designed.

6.     I understand that the defendants contend that the term "predetermined" as used within the phrases "predetermined output distribution" of claims 1, 13, 29, and 47 of the '370 patent, "predetermined manner" of claim 1 of the '177 patent, and "predetermined pattern of deformities" of claims 1 and 33 of the '660 patent is indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood with reasonable certainty those terms as they are used in the claims, and I believe that they should be accorded their plain and

ordinary meaning. Each of those terms is written as part of a detailed claim limitation that imparts a reasonably certain scope to the term. One of ordinary skill in the art would have known the reasonable scope of those terms by reading them in their overall context in the claims; furthermore, the specific applications for the patents-in-suit as cited in ¶¶ 5 and 10, *e.g.*, LCD backlight or lighting in general, decorative and display lighting …" would have further informed one of ordinary skill in the art of the reasonable scope of these terms.

7.   I understand that the defendants contend that the term "well defined" as it is used within the phrases "well defined optical elements or deformities" of claims 1, 16, and 31 of the '194 patent and "optical elements or deformities of well defined shape" of claim 28 of the '194 patent is indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood those terms with reasonable certainty as they are used in the claims and believe that they should be accorded their plain and ordinary meaning, or, in the alternative only, construed as "optical elements or deformities having clearly distinguishable limits, boundaries, or features." The patent specification gives specific examples of "well defined optical elements or deformities" and "optical elements or deformities of well defined shape". '194 patent at col. 5, ll. 43-52; col. 5, l. 66 through col. 6., l. 17, which would have further informed one of ordinary skill in the art of a reasonably certain scope of "well defined optical elements or deformities" and "optical elements or deformities of well defined shape."

8.   I understand that the defendants contend that the term "quite small" within the phrase "a pattern of deformities on one side of the sheet or film having a width and length that is quite small in relation to the width and length of the sheet or film" of claim 1 of the '547 patent is indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood that term with reasonable certainty as it is used in the claims, and I believe that it should be accorded its plain and ordinary meaning. First, the claim term itself gives reasonable scope to

the term because it provides a reference point for defining what it means for a pattern of deformities to be "quite small," *i.e.*, the term itself states that the pattern of deformities is quite small "in relation to the width and length of the sheet or film." Also, I would have understood the relative scope of "quite small" because the specification provides examples of "a pattern of deformities on one side of the sheet or film having a width and length that is quite small in relation to the width and length of the sheet or film." '547 patent at col. 5, ll. 42-53.

9. I understand that the defendants contend that the term "low loss" within the phrase "pass through a liquid crystal display with low loss" of claims 1, 16, and 28 of the '194 patent, claims 1 and 29 of the '370 patent, and claim 1 of the '547 patent is indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood with reasonable certainty that term as it used in the claims, and I believe that it should be accorded its plain and ordinary meaning or, in the alternative only, construed as "efficiently conducts light through a liquid crystal display." The phrase "low loss" is a phrase that is commonly used when referring to the efficiencies of a back-lighting unit with relation to the transmission of light through a display. It carries a plain meaning to one of skill in the art that light is efficiently conducted through a liquid crystal display. The specification of the patents-in-suit would have further clarified the scope to one of ordinary skill in the art. '547 patent at col. 1, ll. 21-25 and col. 5, ll. 23-30.

10. I understand that the defendants contend that the term "a particular application" within the phrases "to [suit/fit] a particular application" of claim 31 of the '194 patent, claim 5 of the '974 patent, and claims 1, 14, and 15 of the '177 patent is indefinite. In view of the teachings of the art and the patent specifications and claims, I would have understood with reasonable certainty those terms as they are used in the claims, and I believe that they should be accorded their plain and ordinary meaning. One of ordinary skill in the art reading the specification and the

- 5 -

claim terms would have known with reasonable certainty the scope of the phrase "to [suit/fit] a particular application," especially in light of the specification statements of the patents. '194 patent at col. 9, ll. 1-12. That passage specifically lists example applications that one of ordinary skill would have used to understand the reasonable scope of the phrase "to [suit/fit] a particular application.

11.   Under penalty of perjury I declare that the foregoing is true and correct.


Executed on June 16, 2014 at Norwalk, Connecticut.

_____
Kenneth I. Werner