## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC, | § § § | |
| Plaintiff, | § § | C.A. No. 2:13-cv-522 (Consolidated – Lead Case) |
| v. | § § | JURY TRIAL DEMANDED |
| ACER INC. AND ACER AMERICA CORP., | § § § | |
| Defendants. | § § | |

### PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

Plaintiff Innovative Display Technologies LLC ("Plaintiff" or "IDT") hereby files its reply to Defendants' responsive claim construction brief (Dkt. No. 75, the "Response") pursuant to the Court's Docket Control Order, Dkt. No. 37.

## TABLE OF CONTENTS

I. TERMS IN DISPUTE ........................................................................................................ 1

    A. "Pattern of Deformities" Terms ............................................................................. 1

    B. "Continuous Side Walls" ....................................................................................... 2

    C. "Transition Region" ............................................................................................... 4

    D. "Deformities … of a Different Type" ................................................................... 5

    E. "Air Gap" Terms ................................................................................................... 6

    F. "Desired Light Output" Terms .............................................................................. 7

    G. "Predetermined" Terms ......................................................................................... 7

II. ALLEGEDLY INDEFINITE TERMS ............................................................................. 8

    H. "Well Defined Deformities" Terms ...................................................................... 8

    I. "Pattern of Deformities" is "Quite Small" ............................................................ 9

    J. "pass through a liquid crystal display with low loss" ......................................... 10

    K. "to [suit/fit] a particular application" .................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Amhil Enterprises Ltd. v. Wawa, Inc.*,
   81 F.3d 1554 (Fed. Cir. 1996) .................................................................................................. 10

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) .................................................................................................. 7

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega systems, LLC*,
   350 F.3d 1327 (Fed. Cir. 2003) .................................................................................................. 4

*Hand Held Products, Inc. v. Amazon.com, Inc.*,
   No. 12-768, 2014 WL 2873902 (D. Del. June 24, 2014) ........................................................... 9

*IGT v. Bally Gaming Int'l*,
   659 F.3d 1109 (Fed. Cir. 2011) .................................................................................................. 8

*International Rectifier Corp. v. IXYS Corp.*,
   361 F.3d 1363 (Fed. Cir. 2004) ................................................................................................ 10

*Johnson Labs. v. Meissner Mfg. Co.*,
   98 F.2d 937 (7th Cir. 1938) ...................................................................................................... 11

*Maury Microwave. Inc. v. Focus Microwaves, Inc.*,
   No. 10-03902, 2012 WL 9161988 (C.D. Cal. July 30, 2012) .................................................. 11

*Microsoft Corp. v. i4i Ltd. Partnership*,
   131 S. Ct. 2238 (2011) ............................................................................................................... 9

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) .................................................................................................. 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ............................................................................................................... 8

*Paragon Solutions, LLC v. Timex Corp.*,
   566 F.3d 1075 (Fed. Cir. 2009) .................................................................................................. 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 8

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) .................................................................................................. 5

*VirnetX, Inc. v. Microsoft Corp.*,
   No. 6:07-cv-80, 2009 WL 2370727 (E.D. Tex. July 30, 2009) .................................................. 5

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   No. 08-05129, 2010 WL 653452 (N.D. Cal. Feb. 22, 2010) ...................................................... 9

*Warrior Lacrosse, Inc. v. Brine, Inc.*,
   No. 04-71649, 2006 WL 763190 (E.D. Mich. Mar. 8, 2006) ..................................................... 9

## I. TERMS IN DISPUTE

### A. "Pattern of Deformities" Terms

Defendants' Response is designed to distract the Court from the inventor's intent to include "a random placement pattern" and "a variable pattern" among the types of patterns. Defendants never dispute that intent. Instead, Defendants advance diversionary arguments such as arguing against IDT's inclusion of the phrase "ordinary pattern," alleging that it "is not a well understood term."[1] But, if "ordinary pattern" is not a well understood term, how can the Court construe "pattern" with a "plain and *ordinary* meaning" as Defendants request? To the extent that the Court determines that "ordinary" need not be included, Plaintiff proposes that the Court adopt this alternative construction: "a pattern of deformities, which may include a random placement pattern, or a variable pattern."

Defendants also allege that IDT's construction does not explain the difference between "ordinary patterns," "random placement patterns," and "variable patterns." That argument is flawed on its face. For example, if jurors can determine that a pattern is either a "random placement pattern" or a "variable pattern," that is the end of the inquiry. Moreover, the proper inquiry is from the perspective of a person of ordinary skill in the art, not from the perspective of the average juror.[2] Even Defendants do not dispute that "the patent clearly explains that 'FIG 4a includes a *variable* pattern,'"[3] and a jury – guided by expert testimony – can do the same.

Defendants further contend that the specification describes Fig. 4a as showing a variable pattern, while IDT has said that Fig. 4a shows a random placement pattern, which Defendants

---

[1] Response at 4.
[2] *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed.").
[3] Response at 4 (emphasis in Response).

allege shows the "confusion inherent in its [IDT's] construction." But Fig. 4A shows <u>both</u> a random placement pattern and a variable pattern. As Defendants correctly state in their brief, Fig. 4a shows a variable pattern as considered moving right to left along the four circles 21.[4] What IDT further noted was that Figure 4a graphically depicts a random placement pattern in "the <u>far left-hand circle 21 (green)</u>."[5] IDT's statement was directed at a specific pattern shown in *one* of the circles 21; the specification cited by Defendants relates to all four circles 21, taken together.



Defendants never dispute that the inventor intended to include "random placement patterns" and "variable patterns" within the scope of the term "patterns of deformities." And Defendants never deny that their push for a "plain and ordinary meaning" construction is merely a backhanded attempt to exclude "random" and "variable" patterns from the construction.

### B. "Continuous Side Walls"

Defendants' construction imports three limitations into the term: (1) "uninterrupted walls"; (2) "that are free of breaks"; and (3) "on the side of the tray." Defendants argue that Fig. 6 supports their construction because the walls of Fig. 6 "are smooth and without breaks."[6] But the Defendants' conclusory interpretation of Fig. 6 offers no support for importing "interrupted" and

---

[4] *Id.*
[5] *Plaintiff's Opening Claim Construction Brief* (Dkt. No. 69) ("IDT's Opening Brief") at 6 (emphasis added).
[6] Response at 6.

"free of breaks" into the term. In fact, Figure 6 shows that the continuous side walls are interrupted by secondary reflector 38, yet still completely surround cavity 36.[7]



Defendants also argue that prosecution history estoppel supports their construction, claiming the "applicant was clear during prosecution: the continuous side walls must be free of interruptions and breaks."[8] But there is no such statement in the prosecution history. In fact, Defendants' brief uses an ellipsis to hide the rest of the story. The prosecution history does *not* note only that: "Kitazawa does not have a back wall and continuous side walls. . . .,"[9] but rather:

> the so-called tray 12 of Kitazawa does not have a back wall and continuous side walls that form a hollow cavity or recess completely surrounded by the side walls in which at least one light source is located, mounted or positioned[10]

The inventor first argues that element 12 is *not* a tray – as noted by the inventor's use of "so-called tray 12." Instead element 12 is a "light guide plate,"[11] which fits into element 18, shown below. Because element 12 is not a tray, its back walls and continuous side walls do not "form a hollow cavity or recess completely surrounded by the side walls in which at least one light source is located, mounted or positioned." In an egregious attempt to support their argument, Defendants doctored the actual Figure 2 from Kitazawa, and kept the label as "Kitazawa, Fig. 2" without noting their *deletion* of element 18, which receives element 12:

---

[7] '177 patent, col. 6, ln 66 – col. 7, ln. 5 ("panel assembly 32 includes a tray 35 having a cavity or recess 36 … one or more secondary reflective or refractive surfaces 38 may be provided on the panel member 33 and/or tray 35").
[8] Response at 7.
[9] *Id.*
[10] '177 patent, prosecution history, Reply to Office Action of October 3, 2007 (January 22, 2008) at 8. (attached hereto in relevant part as Exhibit A) (emphasis added).
[11] U.S. Patent No. 5,070,431 to "Kitazawa" *et al.*, at col. 3, ll. 5-6 ("the light guide plate 12 is transparent").

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**     **PAGE 3**



| Defendants' Excerpt of Figure 2 | Excerpt of Figure 2, Showing element 18 deleted by Defendants |

At most, the prosecution history merely confirms that element 12 is **not** a tray and that even so, its walls do not form a completely-surrounded, hollow cavity. That statement does not equate to a construction that requires a tray with "uninterrupted walls" "that are free of breaks."

Defendants also cite to a definition for "continuous" as "[u]ninterrupted in time, sequence, substance, or extent."[12] Yet Defendants offer no context to explain why this definition translates to Defendants' construction, much less why the Court should use it.[13]

### C. "Transition Region"

Defendants' Response ignores the primary statement in the specification in which the inventor describes a "transition region" as "a light transition member or area 4 used to make the transition from the light source 3 to the light emitting panel 2."[14] Neither that passage nor any other in the specification requires the transition region to both spread and transmit light.

Defendants argue that Plaintiff's tutorial narration supports their construction because it states that the "transition region allows the light to distribute more evenly when it first enters the panel from the LEDs."[15] But that does not mean that a transition region in an apparatus claim must <u>actively spread and transmit light</u>. To the contrary, as the Federal Circuit has made clear, it is

---

[12] Response at 7.
[13] *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1348 (Fed. Cir. 2003) ("Without proper context in selecting a dictionary definition, a court can err by importing a limitation into patent claims from a dictionary as well as from a patent specification.").
[14] '660 patent at col. 2, ll. 64-65.
[15] IDT's Technology Tutorial, slide 13.

wholly improper to read such "use" limitations into an apparatus claim:

> Construing a non-functional term in an apparatus claim in a way that makes direct infringement turn on the use to which an accused apparatus is later put confuses rather than clarifies, frustrates the ability of both the patentee and potential infringers to ascertain the propriety of particular activities, and is inconsistent with the notice function central to the patent system.[16]

Moreover, Plaintiff's tutorial is not even evidence (or, at most, extrinsic evidence) and cannot override the fact that the intrinsic evidence does not support Defendants' construction.[17] Finally, Defendants contend, without any supporting authority, that because claim 2 of the '660 patent includes the phrase a "region <u>configured to</u> spread and transmit light," whereas their construction is a "region <u>that</u> spreads and transmits light," that claim differentiation does not apply. But Defendants cannot so easily side-step the doctrine of claim differentiation by making a slight, but meaningless, change to their proposed construction.[18]

### D. "Deformities … of a Different Type"

Defendants' argument is premised on their assumption that "type" and "shape" are mutually exclusive. That premise ignores the plain reading of the claims 16 and 17, which shows that "type" encompasses "shape." When those claims were prosecuted, the phrase "or shapes" was deleted from their overall limitations such that the claims read: "at least one the types ~~or shapes~~ of deformities is prismatic" (claim 16) or "lenticular" (claim 17).[19] After that deletion, the inventor intentionally kept the shape terms "prismatic" and "lenticular" and associated them with the "type" of deformity. Thus, the terms "type" and "shape" were not mutually exclusive in the inventor's

---

[16] *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009).
[17] *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07-cv-80, 2009 WL 2370727, at *8 (E.D. Tex. July 30, 2009).
[18] *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005) ("Although the doctrine is at its strongest where the limitation sought to be 'read into' an independent claim already appears in a dependent claim, there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims.") (citations omitted).
[19] '370 patent, prosecution history, January 15, 2009, Amendment at p. 6. Note that claim 16 was formerly claim 18 and claim 17 was formerly claim 19 during prosecution.

eyes. Defendants' only rebuttal to that argument is an unsupported assertion that the words "prismatic" and "lenticular" do not describe shapes.[20] Substituting Defendants' construction into claim 16 would cause the claim to read: "at least one of the deformities' characteristics, other the shape, is prismatic," which renders the claim illogical. Tellingly, Defendants point to no prior art that was overcome by deleting "or shape" from the claims because the purpose of the amendment was never to overcome prior art that disclosed shapes.

### E. "Air Gap" Terms

Defendants argue that Figure 5 supports their construction, which seeks to import a "continuous layer of air" and "no direct physical contact" into the claims. But the Court should not read a preferred embodiment into the claims. Further, a simple modification of Fig. 5 shows the impropriety of Defendants' construction. If a spacer is added in the middle of air gap 30, Defendants argue that no air gap exists at all. But logic dictates that there would be *two* air gaps:



A small insect placed inside area 30 still breathes air whether or not the red spacer above is present. Defendants' illogical argument that *any* touching between "panel 14" and either "the back reflector 26 or sheet or film 27" results in "no gap at all"[21] is simply not true.

Defendants next turn to this prosecution history statement to support their construction:

> In Hou et al ('439) <u>the reflecting means 18</u> (including the spacer 82 that separates the microlenses 80 and microprisms 28) <u>is optically coupled to the wave guide 16</u> (column 4, lines 14-17 and column 6, lines 61 and 62). Thus there is no air gap in Hou et al between the light emitting area of a light emitting member and a separate transparent sheet or film as claimed.[22]

---

[20] Response at 13.
[21] *Id.* at 14.
[22] '547 patent, prosecution history, January 15, 2009, Amendment at 11 (emphasis added).

But the inventor stated that no air gap exists between <u>reflecting means 18 and wave guide 16</u>. He did not state that there was no air gap between element 26 and element 82, as Defendants allege.



### F. "Desired Light Output" Terms

Defendants' arguments ignore the fact that nowhere in the patent, specification, or prosecution history is "desired light output" defined as a "specific, predefined output." Additionally, Defendants offer the Court no extrinsic evidence – not even a dictionary definition – that shows that "desired light output" means "specific, predefined output." Instead, Defendants cite to excerpts from the specification, none of which are examples of the inventor acting as a lexicographer, to define "desired light output" as a "specific, predefined output." Defendants also cite two Federal Circuit cases as support for their construction, but neither of those cases define "desired" as "specific, predefined." One of Defendants' cases, *Datamize*, even recognized that the construction of "desired" terms turns on the specific facts of the each case.[23]

### G. "Predetermined" Terms

Defendants argue that the court in *IGT v. Bally Gaming Int'l*[24] construed "predetermined event" as the "occurrence of one or more conditions chosen in advance." But IDT cannot be held a different term's construction in a different case on different technology (slot machines).[25] In fact,

---

[23] 417 F.3d at 1375 n.
[24] 659 F.3d 1109, 1118 (Fed. Cir. 2011).
[25] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1333 (Fed. Cir. 2005) ("That the determination of the meaning of a particular term in one patent will not necessarily bear on the interpretation of the same term in a subsequent patent illustrates this point; while the term is the same, the underlying factual context is different.").

during construction, the parties in *Bally* <u>agreed</u> that "predetermined event" meant "a triggering event that is determined in advance of its occurrence,"[26] but even so, IDT never agreed to the "chosen in advance" language argued by Defendants. A construction that differs from an <u>agreed</u> construction in an unrelated case on unrelated technology should hold no bearing on construction in this case. Defendants also cite to four dictionary definitions, none of which state that "predetermined" means "chosen in advance."

## II. ALLEGEDLY INDEFINITE TERMS

In *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court clarified the definiteness standard. [27] But *Nautilus* did not alter the heavy burden of proof that Defendants face in their indefiniteness arguments: the patents-in-suit are presumed valid, and therefore definite, and the party alleging indefiniteness must establish otherwise by clear and convincing evidence.[28] Defendants have not met that heavy burden for any the terms below.

### H. "Well Defined Deformities" Terms

Defendants argue that "well defined optical elements or deformities" and "optical elements or deformities of well defined shape" are indefinite terms of "degree." But Defendants offer the Court no evidence, and only attorney argument, that the terms are indefinite. For that reason alone, Defendants' argument must fail.[29]

---

[26] *IGT v. Bally Gaming International Inc. et al.*, Case No. 1:06-cv-00282 (D. Del., filed Apr. 28, 2006) at Dkt. No. 273 (attached hereto as Exhibit B).
[27] 134 S. Ct. 2120, 2129 (2014) ("a patent's claims, viewed in light of the specification and prosecution history, must inform those skilled in the art about the scope of the invention with reasonable certainty.").
[28] *Id.* at 2130 n. 10 (citing 35 U.S.C. § 282, ¶ 1 ("[a] patent shall be presumed valid,' and '[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity") and *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242 ("invalidity defenses must be proved by 'clear and convincing evidence'")).
[29] *Hand Held Products, Inc. v. Amazon.com, Inc.*, No. 12-768, 2014 WL 2873902, at *16 (D. Del. June 24, 2014) ("Amazon provides no expert testimony in support of its indefiniteness argument, relying instead on attorney argument. The court determines Amazon's arguments fail to establish by clear and convincing evidence these terms are indefinite.").

Defendants provide no expert opinion on whether one of ordinary skill in the in the art would understand the reasonable scope of these terms. Defendants have not cited to a single case in which the term "well-defined" has even been disputed as an indefinite term of degree. In fact, the term "well-defined" is so readily understood by one of ordinary skill in the art that courts across the country have used the phrase "well-defined" in their own constructions of other terms.[30] As Plaintiff's Opening Brief shows, the specification of the patents-in-suit give one of ordinary skill in the art guidance as to the meaning of "well defined optical elements or deformities,"[31] and one of ordinary skill in the art, having read the entire specification and prosecution history, would have been reasonably certain of the scope of the "well defined" terms.[32]

## I. "Pattern of Deformities" is "Quite Small"

Once again Defendants cite to no case law in which the phrase "quite small" was disputed as indefinite. Defendants cite no expert opinion on whether one of ordinary skill in the in the art would have understood the reasonable scope of this term. Defendants' attorneys merely feign an inability to understand this term. That is not clear and convincing evidence.

Claim 1 of the '547 patent provides an anchor for one of ordinary skill in the art to determine what "quite small" means by stating that the pattern is "quite small <u>in relation to the width and length of the sheet or film</u>." As further discussed in Plaintiff's Opening Brief, the specification also explains "quite small" in several in-depth passages.[33] Accordingly, one of ordinary skill in the art would have understood the reasonable scope of this term.[34]

---

[30] *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-05129, 2010 WL 653452, at *34 (N.D. Cal. Feb. 22, 2010) (construing a term as "within <u>well-defined</u> tolerance limits") (emphasis added); *Warrior Lacrosse, Inc. v. Brine, Inc.*, No. 04-71649, 2006 WL 763190, at *17 (E.D. Mich. Mar. 8, 2006) (term construed as "not necessarily formed by straight lines intersecting at a point to form a <u>well defined</u> angle.") (citing *International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1370 (Fed. Cir. 2004)); *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).
[31] Plaintiff's Opening Brief at 21-22.
[32] *Id.* at 23.
[33] *Id.* at 26.
[34] *Id.*

### J. "pass through a liquid crystal display with low loss"

Defendants provide no expert testimony in support of their indefiniteness arguments for the term "pass through a liquid crystal display with low loss." Defendants do not cite to any cases showing that any parties have ever contested the phrase "low loss" as indefinite. To the contrary, a court has recently construed a term containing the phrase "low loss" without mention of indefiniteness,[35] and another early decision discussed the phrase "low loss" and wrote affirmatively about distinguishing between "low loss," "high loss," and "intermediate loss."[36]

As IDT shows in its Opening Brief, the specification provides one of ordinary skill in the art with an understanding of the reasonable scope of "low loss."[37] Furthermore, any person of ordinary skill in the art of LCD backlights would have been aware of the concept of low loss; without low loss, the backlight would unnecessarily waste power and battery life and would not direct bright light through the LCD.[38]

### K. "to [suit/fit] a particular application"

Defendants do not have any expert declarations to support their argument because no expert would testify to a lack of understanding of the reasonable scope of this term. The claims give specific examples of <u>the particular applications for which the patents-in-suit are intended</u>.[39] One of ordinary skill in the art would obviously read the claims with those applications in mind, and thus would have understood the scope of these terms with reasonable certainty.[40]

---

[35] *Maury Microwave. Inc. v. Focus Microwaves, Inc.*, No. 10-03902, 2012 WL 9161988, at *48 (C.D. Cal. July 30, 2012) (construing "low-loss, electrically small signal coupling probe" as "a low loss coupling probe having an …").
[36] *Johnson Labs. v. Meissner Mfg. Co.*, 98 F.2d 937, 942 (7th Cir. 1938)("He could have used a low-loss winding, a high-loss winding or an intermediate-loss winding, but, acquainted as he was with the exigencies of the utilization of his device, he was bound to know that a low-loss winding was essential to successful utility of such a combination as he suggested.").
[37] Plaintiff's Opening Brief at 27-29.
[38] *Id.* at 28.
[39] *See id.* at 29 (citing '194 patent at col. 9, ll. 1-12).
[40] *Id.* at 29.

Dated: July 7, 2014　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey R. Bragalone*_____
　　　　　　　　　　　　　　　　　　　Jeffrey R. Bragalone (lead attorney)
　　　　　　　　　　　　　　　　　　　Texas Bar No. 02855775
　　　　　　　　　　　　　　　　　　　Patrick J. Conroy
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24012448
　　　　　　　　　　　　　　　　　　　Justin B. Kimble
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24036909
　　　　　　　　　　　　　　　　　　　T. William Kennedy, Jr.
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24055771
　　　　　　　　　　　　　　　　　　　Daniel F. Olejko
　　　　　　　　　　　　　　　　　　　Pennsylvania Bar No. 205512
　　　　　　　　　　　　　　　　　　　**Bragalone Conroy PC**
　　　　　　　　　　　　　　　　　　　2200 Ross Avenue
　　　　　　　　　　　　　　　　　　　Suite 4500W
　　　　　　　　　　　　　　　　　　　Dallas, TX 75201
　　　　　　　　　　　　　　　　　　　Tel: (214) 785-6670
　　　　　　　　　　　　　　　　　　　Fax: (214) 785-6680
　　　　　　　　　　　　　　　　　　　jbragalone@bcpc-law.com
　　　　　　　　　　　　　　　　　　　pconroy@bcpc-law.com
　　　　　　　　　　　　　　　　　　　jkimble@bcpc-law.com
　　　　　　　　　　　　　　　　　　　bkennedy@bcpc-law.com
　　　　　　　　　　　　　　　　　　　dolejko@bcpc-law.com

　　　　　　　　　　　　　　　　　　　T. John Ward Jr.
　　　　　　　　　　　　　　　　　　　Texas Bar No. 00794818
　　　　　　　　　　　　　　　　　　　Claire Abernathy Henry
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24053063
　　　　　　　　　　　　　　　　　　　**Ward & Smith Law Firm**
　　　　　　　　　　　　　　　　　　　1127 Judson Road, Suite 220
　　　　　　　　　　　　　　　　　　　Longview, TX 75601
　　　　　　　　　　　　　　　　　　　Tel: (903) 757-6400
　　　　　　　　　　　　　　　　　　　Fax: (903) 757.2323
　　　　　　　　　　　　　　　　　　　jw@wsfirm.com
　　　　　　　　　　　　　　　　　　　claire@wsfirm.com


　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　**INNOVATIVE DISPLAY**
　　　　　　　　　　　　　　　　　　　**TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of July, 2014, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

                                                                */s/ T. William Kennedy*