**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 2:13-cv-522-JRG (CONSOLIDATED - Lead Case) |
| v. | |
| ACER INC., et al., Defendants. | **JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION TO STRIKE AMENDED INVALIDITY CONTENTIONS**

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND.............................................................................................1

II.   RELEVANT AUTHORITIES AND CASE LAW ...........................................................4

III.  DEFENDANTS AMENDMENTS WERE MADE IN GOOD FAITH AND ARE
PERMITTED UNDER P.R. 3-6(A)...............................................................................5

     A.   The "Low Loss" Terms ....................................................................................6

     B.   "Continuous Side Walls"...................................................................................8

     C.   The "Air Gap" Terms .......................................................................................9

     D.   "To [Suit/Fit] a Particular Application" ..........................................................10

     E.   The "Pattern of Deformities" Terms ................................................................11

     F.   The "Transition Region" .................................................................................12

IV.  DEFENDANTS AMENDMENTS ARE PERMISSIBLE UNDER P.R. 3-6(b) ...............12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexsam Inc. v. Evolution Benefits, Inc. et al.,*
  Case No. 2:07-cv-00288-TJW, Dkt. No. 132 (E.D. Tex. Oct. 7, 2009)..............................4, 7

*Alexsam, Inc. v. IDT Corp.,*
  No. 2:07-cv-420, 2011 WL 108725 (E.D. Tex. Jan. 12, 2011) ...............................................5

*Finisar Corp. v. DirecTV Grp., Inc.,*
  424 F. Supp. 2d 896 (E.D. Tex. 2006.) ...................................................................................6

*MASS Engineered Design Inc. v. Ergotron, Inc.,*
  250 F.R.D. 284 (E.D. Tex. 2008)........................................................................................5, 8

*Nike, Inc. v. Adidas Am. Inc.,*
  479 F. Supp. 2d 664 (E.D. Tex. 2007) .....................................................................................4

*SSL Services, LLC v. Citrix Systems, Inc.,*
  Case No. 2:08-cv-00158-JRG, 2012 U.S. Dist. LEXIS 35788 (Mar. 16, 2012) ...............4, 13

*S & W Enters. L.L.C. v. Southtrust Bank of Alabama,*
  315 F.3d 533 (5th Cir. 2003) ...................................................................................................5

OTHER AUTHORITIES

P. R. 3-6(a)(2)(B)...................................................................................... 4, 5, 13, 14

P. R. 3-6(b) ................................................................................................. 4, 12, 13

Defendants Dell Inc. and Hewlett-Packard Company (collectively, "Defendants") hereby submit this brief in opposition to the Motion to Strike Amended Invalidity Contentions filed by Plaintiff Innovative Display Technologies LLC ("IDT") (Dkt. No. 170, the "Motion" or "Mot."). IDT's Motion is without merit and is contrary to the spirit and letter of this Court's Patent Rules. Disregarding the Court's rule allowing amendments when warranted by a claim construction ruling, IDT indirectly accuses Defendants of gamesmanship (Mot. at 4, 5), hiding prior art (*id.* at 3, n.4; 5), adding a "flood" of references and amending the contentions wholesale, (*id.* at 3, 6, 7), and plain laziness. (*Id.* at 8, 9, and 12.) This unsupported attorney argument only distracts from IDT's failure to meaningfully address the Court's constructions, and offers nothing more than conclusory statements that the Court's constructions were not "unexpected."

In reality, the Court's Claim Construction Order included several constructions that were wholly unexpected and differed considerably from what the parties had proposed, and significantly *broadened* the scope of the claims. For instance, the Court *sua sponte* wrote the "low loss" limitation out of the claims, and similarly construed the limitation "to [suit/fit] a particular application" as being so broad as to lack any real constraint on the claims. Pursuant to the Court's Patent Rules, which specifically allow for the good faith amendment of invalidity contentions as a result of claim construction, Defendants provided timely, targeted amendments to their contentions and identified additional prior art—just nine prior art products and nine additional publications—showing the asserted claims are *further* invalid for new and different reasons under the Court's broadened and unexpected constructions. Defendants are entitled to present this additional evidence of invalidity at trial.

## I.    FACTUAL BACKGROUND

On February 14, 2014, Defendants served their Initial Invalidity Contentions, identifying

46 prior art references against 47 asserted claims in seven patents-in-suit.[1] (Mot. Ex. B.) On May

5, 2014, after the parties exchanged their proposed claim terms and preliminary constructions,

the parties submitted their Joint Claim Construction and Prehearing Statement to the Court. The

parties identified one agreed construction and 18 terms with disputed constructions. (Dkt. No.

61.) The disputed constructions included the following terms:

- "pass through a liquid crystal display with low loss;"
- "to [suit/fit] a particular application;"
- "continuous side walls;"
- "an air gap between the film, sheet, plate or substrate and the panel member;"
- "pattern of deformities" / "pattern of light extracting deformities;" and
- "transition region."

(*Id.*) Thereafter, IDT changed its proposed construction for "pattern of deformities" and

"continuous side walls." On August 26, 2014, Magistrate Judge Payne issued his claim

construction ruling providing his construction for each of the above terms. (Dkt. No. 101.)

Recognizing that the ruling unexpectedly and significantly broadened the asserted claims,

Defendants again examined the prior art they had gathered, and undertook a supplemental search

for prior art in view of the Court's constructions. Defendants focused on prior art *devices* that

were now relevant as a result of the Court's construction of terms such as "continuous" side

walls, an "air gap" between film layers, and a "transition region." Prior art devices were also

now relevant as a result of the Court's construction of "low loss"—because the Court wrote this

limitation out of the claims, Defendants now did not have to show that prior art devices achieved

redirection of light "with low loss," which brought certain prior art devices within the scope of

the claims that previously were not. In connection with this supplemental search and review,

---

[1] The asserted claims are:  U.S. Patent No. 6,755,547: claims 1, 2, 4; U.S. Patent No. 7,300,194: claims 1, 4-6, 16, 22, 23, 27, 28, 31; U.S. Patent No. 7,384,177: claims 1, 6, 7, 9, 10, 13-15, 19; U.S. Patent No. 7,404,660: claims 1, 3, 10, 16, 17, 25, 33; U.S. Patent No. 7,434,974: claims 1, 3-5, 7-9, 13; U.S. Patent No. 7,537,370: claims 1, 4, 8, 13, 29, 47; U.S. Patent No. 8,215,816: claims 1, 3, 4.

Defendants served subpoenas to manufacturers of these prior art devices that included topics specifically directed to the Court's claim constructions.[2] (*See*, *e.g.*, Ex. 1.) Defendants served the subpoenas with over a month left in Discovery.

Defendants ultimately identified and charted nine devices and nine additional publications that address the expanded scope of the asserted claims.[3] On October 15, 2014—six weeks before IDT's invalidity rebuttal expert report was to be served and within the time set forth by local rule—Defendants served their Amended Invalidity Contentions. (Mot. Ex. A.).[4] Also on October 15, Defendants produced copies of the nine prior art publications and images of the nine prior art devices, and made the prior art devices available for inspection. (Ex. 3.) Despite having ample time to do so, IDT chose not inspect the prior art devices until November 18, 2014, over a month after they were made available. On October 24, 2014, the parties held an in-person meet and confer concerning Defendants' Amended Invalidity Contentions. At this meeting, it was agreed that Defendants would provide a detailed letter explaining the unexpected nature of the Court's constructions and the prior art that was added as a result. Defendants provided this letter on October 27, 2014.[5] (Mot., Ex. C.)

On October 27, 2014 Defendants provided their opening expert report on invalidity, which incorporated the nine publications and nine prior art devices. Defendants also provided IDT with raw images of the prior art devices. (Ex. 4.) On November 10, 2014, IDT for the first

---

[2] IDT sought to frustrate this effort by inappropriately interfering with the subpoenas by sending letters to certain subpoena recipients falsely claiming that the subpoenas were untimely and suggesting that any efforts in regard to the subpoena "are likely to be futile." (Ex. 2.) The full extent of IDT's interference is still unknown.

[3] The exact devices and references added to the contentions are found in Exhibit A attached hereto.

[4] IDT suggests that Defendants' current amendments are somehow connected to Defendants' previous request for leave to amend invalidity contentions. (Mot. at 1.) *None* of the references in Defendants' amended contentions are the same as those Defendants sought to add earlier. The current references were added in response to the Court's Claim Construction Order.

[5] Rather than further the meet and confer process and respond to Defendants' letter, IDT filed the instant Motion.

time asked to schedule a date to inspect the prior art products, stating that they expected the inspection to take only one day. (Ex. 5.) This inspection occurred on November 18, 2014. At the time of the inspection, IDT's invalidity expert report was due on November 24, 2014. Since then, the parties agreed to extend this deadline to December 5, 2014. (Dkt. No. 200.)

## II.    RELEVANT AUTHORITIES AND CASE LAW

Local Patent Rule 3-6 allows a party to amend its invalidity contentions without leave if that party "believes in good faith that the Court's Claim Construction Ruling so requires." P.R. 3-6(a)(2)(B). This rule allows parties to respond to an unexpected claim construction by the Court. *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007); but it is not intended to allow parties to file new contentions simply because a claim construction order has been issued. *Id.* This Court has recognized the subjective nature of the "good faith" requirement of P.R. 3-6(a), and has found that a construction adopted by the Court may be unexpected if it is "sufficiently different" from those proposed by the parties. *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-cv-00158-JRG, 2012 U.S. Dist. LEXIS 35788, at *7-8 (Mar. 16, 2012). In addition, a claim construction may be "unexpected" within the context of P.R. 3-6(a) even if the Court adopts the claim constructions of the patentee. *See Alexsam Inc. v. Evolution Benefits, Inc. et al.*, Case No. 2:07-cv-00288-TJW, Dkt. No. 132 (E.D. Tex. Oct. 7, 2009) (denying motion to strike amended invalidity contentions served within the 50-day period pursuant to Rule 3-6, despite the court adopting the patentee's constructions on the terms at issue).

Alternatively, a party may seek leave to amend upon a showing of good cause under P.R. 3-6(b). "The Court has broad discretion to allow amendments to invalidity contentions and considers four factors: (1) the explanation for the party's failure to meet the deadline; (2) the importance of what the Court is excluding; (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice."

*Alexsam, Inc. v. IDT Corp.*, No. 2:07-cv-420, 2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011)

(citing *S & W Enters. L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003)).

## III.   DEFENDANTS' AMENDED CONTENTIONS SET FORTH NEW GROUNDS OF INVALIDITY UNDER THE COURT'S CLAIM CONSTRUCTIONS

IDT's motion to strike fails because the Court's constructions were sufficiently different

from the parties' proposals, and were therefore unexpected. Unlike in the cases cited by IDT,

Defendants' good faith here is further shown by the fact that Defendants have not attempted a

wholesale revision of their invalidity contentions or attempted to revive abandoned contentions.

Rather, Defendants provided narrowly tailored amendments tied to the Court's constructions.

IDT's argument that the Court's claim constructions were not "unexpected" relies

primarily on two cases—*MASS Engineered* and *Finisar*—which involve extreme scenarios that

are readily distinguishable from this case. IDT repeatedly cites *MASS Engineered* for the quote

that allowing defendants' to amend invalidity contentions under P.R. 3-6(a) "would encourage

future accused infringers to propose narrow constructions focused on non-infringement while

sidelining potential invalidity defense until the Court issues its claim construction opinion."

(Mot. at 3, 4 (quoting *MASS Engineered Design Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286

(E.D. Tex. 2008).) However, the court's statement in that case was in response to a defendant

who initially relied *solely* on a defense of non-infringement, and categorically failed to raise any

invalidity defense or provide *any invalidity contentions whatsoever*. That defendant attempted to

assert an invalidity defense and provided invalidity contentions only *after claim construction*.

*MASS Engineered*, 250 F.R.D. at 286. The court in *MASS Engineered* understandably took issue

with the defendant's late attempt to raise a defense of invalidity after having relied solely on non-

infringement—which is not the case here. Here, Defendants did not "sideline" the invalidity

defense; Defendants have asserted from the very beginning that IDT's patents are invalid and

timely provided thorough, detailed contentions in support.

IDT also repeatedly cites to *Finisar* to argue that a party cannot claim a construction is "unexpected" and prepare new invalidity defenses simply because "its precise proposal for a construction of a claim term is not adopted by the court." (Mot. at 3-4, 5.) However, *Finisar* involved an attempt to introduce *fifty-eight* new prior art references against a *single* patent, using two different expert reports. *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 897-899 (E.D. Tex. 2006.) Yet even then, the court allowed the defendant to amend its contentions to add two new references, despite being less than three months from trial. 424 F. Supp. 2d at 900.

Here, Defendants amended the contentions to add just nine prior art devices and nine publications across six different asserted patents, nearly six months from trial and before expert reports. *Finisar* is also distinguishable because the defendant in that case, DirecTV, failed to explain how the court's definition of any of the terms was surprising or differed from the parties' proposals. Moreover, DirecTV agreed to many constructions whereas others were closer to DirecTV's proposal than to the patentee's. *Id.* at 901. Again, that is not the case here. Here, the Court's constructions of several claims were broader than anticipated—and raised certain new issues that Defendants were required to address, as discussed in detail below.

**A. Additional Grounds of Invalidity Based on the Construction of "Low Loss"**

The Court's construction of the term "low loss" is the textbook definition of an "unexpected" construction. Defendants argued that the term "pass through a liquid crystal display with low loss" was indefinite because the specification provided no public notice as to what would constitute "low loss" versus any other degree of loss. (Dkt. No. 101 at 52.) IDT argued that one of ordinary skill in the art would have understood the term to cover a more efficient light output by using deformities. (*Id.* at 51.) The Court adopted neither party's position and instead ruled "that the 'low loss' term is analogous to a whereby clause and does not limit

the claims in which it appears." (*Id.* at 54.) The Court's decision to read this term out of the asserted patents[6] was completely unexpected under any reasonable standard. As a result, the construction had a material impact on Defendants' invalidity contentions. Defendants recognized that, based on the parties' proposed constructions, it would have been difficult to show "low loss" in an actual prior art device—and likely even requiring testing of some kind. Moreover, because the specification failed to provide any standard to determine "low loss," the scope of such testing was unknown. These prior art products, which may not have been asserted before, are now invalidating in light of the Court's construction. Regarding published prior art, claims with this limitation are now further invalid based on any publication that shows a film or sheet that redirects light—regardless of whether it discusses low loss. Based on this unexpected ruling, Defendants added Japanese Patent App. Publication JP H6-273756 (Ex. 6, "Gyoko") to the contentions.

IDT argues that the Court's construction of this term cannot be unexpected because the construction did not *add* an additional, unexpected limitation to the parties' construction. (Mot. at 6.) IDT provides no authority to support its argument that a construction is "unexpected" only if it adds a limitation to the claims. Moreover, IDT's reasoning lacks common sense. As in this case, a court's unexpected *broadening* of a claim certainly opens up the claim to new prior art and new grounds for invalidity, which may require amendment of a party's invalidity contentions. *See Alexsam*, Case No. 2:07-cv-288, Dkt. No. 132 (E.D. Tex. Oct. 7, 2009) (noting that the court's construction of certain terms, "according to [defendant], result in claims with a broader scope than [defendant] contemplated in its previously served invalidity contentions" and denying patentee's motion to strike).

---

[6] The "low loss" term is found in claims 1, 16, and 28 of the '194 Patent; claims 1 and 29 of the '370 Patent, and claim 1 of the '547 Patent.

IDT also cites *MASS Engineered* in arguing that the cost and difficulty in locating prior art with a "low loss" limitation "is not an excuse for Defendants to now flood the Court and their contentions with previously undisclosed prior art." (Mot. at 7). Again, *MASS Engineered* is completely inapposite since the defendant in that case did not provide *any invalidity contentions whatsoever* on the basis that to do so would have been expensive. *MASS Engineered*, 250 F.R.D. at 286. Here, Defendants provided thorough invalidity contentions at the outset and did not later "flood the Court" with previously undisclosed prior art. Defendants then provided targeted amendments based on a construction that expanded the scope of potential prior art. IDT has failed to show that the Court's construction of "low loss" was not sufficiently different or unexpected, or that Defendants' amendments based on this term were in bad faith.

## B.  Additional Grounds of Invalidity Based on the Construction of "Continuous Side Walls"

IDT's argument regarding the term "continuous side walls" omits important factual information regarding IDT's own proposed claim construction. In its Motion, IDT states that it argued for a "plain meaning" of "continuous side walls." (Mot. at 3.) IDT omits that it did not argue a "plain and ordinary meaning" of this term until its opening claim construction brief. (Dkt. No. 101, at 11 n.3.) IDT does not mention that both it and Defendants proposed constructions for this term—with Defendants arguing for the construction "uninterrupted walls that are free of breaks on the side of the tray," and IDT arguing for "side walls that completely surround." (*Id.*) The Court construed "continuous side walls" to have its "plain meaning," (*id.* at 17), rejecting not only IDT's proposed construction but also explicitly rejecting Defendants' proposed construction, stating that such side walls did not need to be "uninterrupted" or "free of breaks." (*Id.* at 16.)

The Court's construction not only differed from the parties' original constructions, but

was unexpected because it raised new issues that needed to be addressed. In rejecting

Defendants' proposed construction, the Court's ruling implied—despite the plain meaning of the

term "continuous"—that side walls that are interrupted or not free of breaks *might* fall within this

limitation. On this basis, Defendants identified additional prior art with interrupted side walls or

side walls with breaks that the Court explained might fall

within the "plain meaning" of the term. Specifically,

Defendants added the nine prior art devices that each have

trays with side walls interrupted by notches, as shown, for

example, by the Apple Power Book 540c (see image at right).



*Tray of the Apple PowerBook 540c
with notched side walls*

Defendants also added U.S. Patent No. 5,432,626 (Ex. 7, "Sasuga") which shows a tray having

side walls interrupted with notches—a feature that Defendants reasonably believed would not

have fallen under either side's construction of "continuous side walls" prior to the Court's ruling.

Thus, the prior art devices and Sasuga invalidate the patents under the Court's unexpected,

broadened construction, and so Defendants have added them to the contentions.

### C.  Additional Grounds of Invalidity Based on the Construction of "Air Gap"

Defendants argued that the terms "an air gap therebetween" and "an air gap between the

film, sheet, panel or substrate and the panel member" should be construed as requiring a

"continuous layer of air" between the components. (Dkt. No. 101 at 30.) Defendants'

construction was based on a plain understanding of the term "continuous," but also on arguments

that the applicant made to distinguish a prior art reference during prosecution—U.S. Patent No.

6,129,439 ("Hou"). (Dkt. No. 101 at 33-34.) Hou disclosed a device where two layers were

adjacent to one another and where the only "gaps" between the layers were multiple empty

spaces existing in between tiny microstructures. However, the Court found that the applicant's

argument over Hou did *not* indicate disclaimer of an "intermittent air gap." (*Id.* at 34.) In view of

the Court's construction, it is not entirely clear whether films that are essentially in contact with

one another at multiple points of contact due to microstructures would still include an "air gap."

To address this ambiguity, Defendants amended their contentions to include prior art devices that

have films with multiple points of contact due to micro-

structures, as well as U.S. Patent No. 5,005,108 (Ex. 8,

"Pristash"), which discloses layers that are separated

with "intermittent" gaps (see figure at right). Again, it



*Fig. 3 of Pristash showing layers in contact but with "intermittent" spaces*

was only after the Court's broadening construction of "air gap" that these references became

relevant on this issue, and Defendants amended their contentions to include these additional

grounds of invalidity.

### D. Additional Grounds of Invalidity Based on the Construction of "[Suit/Fit] a Particular Application"

IDT claims that the Court's construction of "to [suit/fit] a particular application" cannot

be unexpected because it argued for a "plain and ordinary meaning," and that the Court adopted

its construction. (Mot. at 3.) However, a closer look at IDT's proposed construction shows that

this is not the case. Although IDT argued that the term should be given its "plain and ordinary

meaning," IDT interpreted the "plain and ordinary meaning" as encompassing any of the

"specifically enumerated applications in the patent." (Dkt. No. 69, at 30.) The Court went well

beyond IDT's proposal, however, and interpreted the term so broadly as to encompass *any*

application, regardless of whether it was enumerated in the asserted patents. (Dkt. No. 101, at 56

("On balance, the claim language adequately explains that the recited apparatus must be tailored

for an application, ***regardless of what that application may be***." (emphasis added).) Thus, the

Court's construction is much broader than either party anticipated, and—like the ruling on the

"low loss" term—effectively eliminates this term from being a meaningful limitation. Given the

Court's broad construction, Defendants amended their contentions to identify the nine prior art

devices as being devices with components that now can be shown to have been designed to

"suit/fit a particular application" as the Court has construed the term. Defendants similarly

amended their contentions to identify U.S. Patent No. 5,054,885 (Ex. 9, "Melby"), U.S. Patent

No. 4,142,781 (Ex. 10, "Bauer"), U.S. Patent No. 5,567,042 (Ex. 11, "Farchmin"), and U.S.

Patent No. 5,548,271 (Ex. 12, "Tsuchiyama").

### E.  Additional Grounds of Invalidity Based on the Construction of "Pattern of Deformities"

IDT claims that the Court's construction of "pattern of deformities" cannot be unexpected

because IDT allegedly proposed "nearly identical" language. (Mot. at 5.) However, as with

"continuous side walls," IDT ignores the fact that it originally proposed a construction that had

absolutely no mention of "random placement pattern" or "variable pattern," and that it was not

until IDT's opening brief that it proposed, as an "alternative" construction, what the Court

ultimately adopted. (Dkt. No. 101 at 7; Dkt. No. 61 at 3, 9.) Thus, the Court's construction was

unexpected because it rejected both side's original constructions.

IDT also does not mention that the Court explicitly admitted that its construction was at

odds with the plain and ordinary meaning of the term "pattern." As stated by the Court:

> Clarification is nonetheless warranted to explain that a "pattern" in
> the patents-in-suit can include 'random placement." Because this
> meaning is seemingly at odds with the ordinary, everyday meaning
> of the word "pattern," construction is appropriate.

(Dkt. No. 101, at 10.) Thus, the Court itself recognized that its construction was "unexpected" in

that it was at odds with the plain meaning of "pattern of deformities."

In view of the Court's broadening construction to include "random or variable" patterns,

Defendants amended their contentions to include two prior art publications: U.S. Patent No.

5,654,779 (Ex. 13, "Nakayama") and U.S. Patent No. 5,404,277 (Ex. 14, "Lindblad"). Nakayama

discloses a "light scattering processing part 12" that would be understood as involving a random distribution of deformities. (Ex. 13 at 4:57-62 and 5:34-38; Figs. 1a, 1b, and 5.) Lindblad discloses a set of uneven surfaces coated in a white paint, which together may be considered a random pattern of deformities as well. (Ex. 14 at 3:11-13; Fig. 3.) Again, these references became relevant only as a result of the Court's broad construction of "pattern of deformities," and were therefore added in good faith.

### F. Additional Grounds of Invalidity Based on the Construction of "Transition Region"

In construing the term "transition region," the Court rejected a "plain meaning" construction of the term and also rejected both parties' proposed constructions. (Dkt. No. 101 at 18, 22.) Contrary to IDT's assertion, the difference between Court's and Defendants' constructions of "transition region" is not "minor." (Mot. at 4.) The Court explicitly stated that it "rejects Defendants' proposed construction," finding that Defendants' construction would "improperly limit the disputed term to a preferred embodiment." (Dkt. No. 101 at 22.) Instead, the Court decided on a broad construction of "a region configured to transmit light," which is so broad as to also encompass any light transmitting region in the prior art.

In view of the Court's unexpected, broad construction, prior art devices that contain light transmitting regions became relevant to this term—specifically the nine prior art devices identified by Defendants. These devices invalidate the claims under the Court's broadened constructions, and Defendants have amended their contentions accordingly.

## IV.    DEFENDANTS AMENDMENTS ARE ALSO PERMISSIBLE UNDER P.R. 3-6(B)

In view of IDT's Motion seeking to strike Defendants' amended contentions, and since IDT also addressed it in its Motion, Defendants alternatively move for leave to amend their contentions pursuant to P.R. 3-6(b), as leave is also warranted and justifies the serving of

amended invalidity contentions under these circumstances. As discussed below, in addition to having amended their contentions in good faith in response to the Court's Claim Construction Order, each of the factors governing amendment under P.R. 3-6(b) weighs in favor of allowing Defendants to amend their contentions.

First, the Court's construction of the six terms above was different from the parties' proposed constructions and raised new issues that implicated new categories of prior art. Thus, this factor weighs in favor of Defendants. *See SSL Services*, 2012 U.S. Dist. LEXIS 35788, at \*8-9 ("[The court's] claim construction ruling was different from either party's proposed construction. On this basis alone, the first factor weighs in [defendant's] favor.")[7]

The second factor—the importance of the amendment—also weighs in favor of allowing Defendants' amended contentions. Defendants previously submitted anticipatory references for each of the asserted claims under their prior understanding of the six terms above. In their amended contentions, Defendants submitted new bases for the invalidity of the asserted claims based on the Court's unexpected constructions. Because the added references invalidate the patents under an *alternative* interpretation of the claims, these references are non-cumulative. For similar reasons, Defendants will be significantly prejudiced if they are not permitted to present their full invalidity defense at trial, particularly as it is based on the Court's actual constructions. This is the very type of prejudice that P.R. 3-6(a) seeks to address and avoid.[8]

The third factor, potential prejudice to IDT, weighs in favor of allowing Defendants to amend their invalidity contentions. IDT's primary claim of prejudice—that it has already

---

[7] IDT's reliance on *GeoTag* is misplaced; in that case the defendant attempted to amend its contentions after a deadline, and did not involve a timely amendment in view of the court's claim constructions.

[8] *Macrosolve Inc. v. Antenna Software, Inc.*, cited by IDT, involves a much different scenario than the case at hand. The defendant in that case sought to add seven cumulative references on top of *250 other references*, whereas here Defendants' original contentions contain less than 50 references asserted against seven different patents.

13

invested substantial time and effort in developing its claim construction positions—is irrelevant. Defendants are not attempting here to revisit or modify the Court's constructions. And IDT's argument is the same that *any* party might make following an amendment in response to the Court's claim constructions pursuant to P.R. 3-6(a). Nor does IDT claim it would have changed its claim construction in any way given Defendants' amended invalidity contentions. IDT also claims that the prejudice to it "is clear" because Defendants' amendments came shortly before the deadline for opening expert reports. (Mot. at 11.) But this prejudice is anything but "clear." Defendants timely amended pursuant to P.R. 3-6(a) and complied in full with the Court's schedule by serving amended invalidity contentions within 50 days of the claim construction ruling. IDT fails to show how its opening expert report on *infringement* was somehow impacted by Defendants' amendment to the *invalidity* contentions. Moreover, to the extent IDT argues it has experienced prejudice in preparing its invalidity expert report, it is of IDT's own doing and IDT has failed to mitigate any such alleged prejudice. Defendants first notified IDT that the nine prior art devices cited in the amended invalidity contentions were available for inspection on October 15, 2014. (Ex. 3.) After IDT did not respond to this offer to inspect the devices, Defendants produced photos of these prior art devices so that IDT would have them regardless of whether or not it chose to inspect the devices. (Ex. 4.) On November 10, 2014, IDT finally responded to Defendants' offer to inspect the devices, at which point Defendants agreed to IDT's first requested date for the inspection: November 17, 2014. (Ex. 15.)[9] Notwithstanding its own delay, IDT still has adequate time to prepare its rebuttal report on invalidity—even more so in

---

[9] The timing of Defendants' disclosure and IDT's lack of diligence in inspecting these physical devices stands in stark contrast to Defendants' diligence in inspecting devices produced by IDT's counsel. In particular, counsel for IDT waited nearly five months—until October 1, 2014—before disclosing that Mr. Parker (the inventor) had physical devices responsive to a subpoena *duces tecum* served in May 2014. (Ex. 16.) Moreover, this belated disclosure by IDT's counsel happened  just 10 days before Mr. Parker's deposition.  (*Id.*) Nevertheless, Defendants immediately contacted counsel for IDT and arranged for the inspection of the devices just five days later.  (Ex. 17.)

view of the parties' agreed extension for such reports until December 5, 2014.

The fourth factor—the availability of a continuance—weighs in favor of permitting amendment. Defendants served their amended invalidity contentions 45 days before the date to serve rebuttal expert reports, so no continuance should be necessary. Thus, each of the relevant factors weighs in favor of allowing Defendants' Amended Invalidity Contentions.

Dated: November 20, 2014          Respectfully submitted,

*/s/ Jamie B. Beaber*
Jamie B. Beaber (D.C. Bar No. 484186)
Stephen E. Baskin (D.C. Bar No. 456015)
Kfir B. Levy (D.C. Bar No. 989212)
Tiffany A. Miller (D.C. Bar No. 982735)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
sbaskin@mayerbrown.com
klevy@mayerbrown.com
tmiller@mayerbrown.com

Robert G. Pluta (Illinois Bar No. 6278255)
Michael J. Word (Illinois Bar No. 6297998)
Amanda K. Streff (Illinois Bar No. 6307105)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8641
rpluta@mayerbrown.com
mword@mayerbrown.com
astreff@mayerbrown.com

*/s/ Peter J. Chassman*
WINSTON & STRAWN LLP
Peter J. Chassman (Texas Bar No. 00787233)
Email: pchassman@winston.com
Phillip D. Price (Texas Bar No. 24060442)
Email: pprice@winston.com

Winston & Strawn LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Kimball R. Anderson (Illinois Bar No. 00049980)
Email: kanderson@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5858
Facsimile: (312) 558-5700

Deron R. Dacus (Texas State Bar No. 00790553)
Email: ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Facsimile: (903) 705-1117

**COUNSEL FOR DEFENDANTS DELL INC. AND
HEWLETT PACKARD COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of November, 2014, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Michael J. Word*
Michael J. Word